IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CORBIN STONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:16-cv-581-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Corbin Stone filed this action on July 18, 2016, seeking judicial review of a final adverse decision of the Commissioner of Social Security denying his applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Doc. 1. Stone applied for disability benefits with an alleged disability onset date of January 21, 2013. His applications were denied at the initial administrative level. Stone then requested and received a hearing before an Administrative Law Judge ("ALJ") on July 18, 2014. Following that hearing, the ALJ denied Stone's claims on October 27, 2014. The Appeals Council rejected a subsequent request for review, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").[1]

With briefing complete, this case is now ripe for review pursuant to 42 U.S.C.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

§§ 405(g) and 1383(c)(3). The parties have consented to the entry of a final judgment by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and Rule 73.1 of the Local Rules for the United States District Court for the Middle District of Alabama. Docs. 9 & 10. Based upon a review of the evidentiary record, the parties' briefs, and the relevant authority, the court finds that the Commissioner's decision is due to be REVERSED and REMANDED, as explained below.

## I. STANDARD OF REVIEW

The court reviews a social security case to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). Indeed, the court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

"Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Jones ex rel. T.J.J. v. Astrue*, 2011 WL 1706465, at *1 (M.D. Ala. May 5, 2011) (citing *Lewis*, 125 F.3d

at 1440). The court must scrutinize the entire record to determine the reasonableness of the decision reached. *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). "If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as a finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision." *Jones*, 2011 WL 1706465, at *2 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)). The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991); *Jones*, 2011 WL 1706465, at *2 (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Stone bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir.

3

2003).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

(1) Is the claimant presently unemployed?
(2) Is the claimant's impairment severe?
(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his or her former occupation?
(5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)). Still, the claimant bears the "ultimate burden of proving disability, and is responsible for furnishing or identifying medical or other evidence regarding his impairments." *Griffis v. Astrue*, 610 F. Supp. 2d 1215, 1218 (M.D. Fla. 2008) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (2011); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); and 42 U.S.C. § 423(d)(5)).

# III. DISCUSSION

## A. Facts

Stone was 37 years old on his alleged disability onset date. He has a limited education and past relevant work experience as a dyer, forklift operator, knitter, auto assembler, power press tender, and parts inspector.

Stone filed for disability benefits based on two "cracked" discs in his neck, hypertension, rheumatoid arthritis, anxiety, and depression. The ALJ held an administrative hearing on July 18, 2014. After that hearing, the ALJ found that Stone suffers from the severe impairments of disc protrusion producing mass effect on the cord, cervical spine; spondylosis, lumbar and cervical spine; and carpal tunnel syndrome, right upper extremity;[2] but that none of those impairments or a combination of those impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ then concluded that Stone has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> The claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant cannot walk on uneven terrain. The claimant can frequently use his lower extremities for the operation of foot controls. The claimant can frequently

---

[2] The ALJ also found that Stone suffers from the following non-severe impairments: adjustment disorder with mixed anxiety and depressed mood hypertension; history of anxiety; cholelithiasis; cholecystitis; fatty infiltration of the liver; possible fibromyalgia; gastroesophageal reflect disease; history of acute gastritis; and rule out pain disorder.

use his upper extremities for reaching overhead, pushing, and pulling. The claimant can frequently use his right upper extremity for handling and fingering. The claimant cannot climb ladders, ropes, poles, and scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can frequently balance, stoop, kneel, and crouch. The claimant cannot crawl. The claimant can occasionally work in humidity, wetness, and extreme temperatures. The claimant cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant cannot operate hazardous machinery. The claimant can occasionally work while exposed to vibration. The claimant can occasionally operate motorized vehicles; however, he cannot operate vehicles in inclement weather. The claimant cannot perform work activity that requires his response to rapid and/or frequent multiple demands. Changes in the claimant's work activity and/or work setting must be infrequent and gradually introduced.

Doc. 14-2. Ultimately, the ALJ concluded that, based on Stone's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, and therefore he was not disabled within the meaning of the Social Security Act. Based on these findings, the ALJ denied Stone's claims.

On December 22, 2014, Stone filed a request with the Appeals Council to review the ALJ's decision denying his claims. Stone submitted additional evidence with that request, including a representative brief and an MRI report from Open MRI of Auburn Opelika dated December 8, 2014. The Appeals Council made that evidence part of its record. On May 19, 2016, the Appeals Council denied Stone's request for review in a written decision:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council [*i.e.*, the representative brief and December 8, 2014 MRI report].
>
> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.
>
> We found that this information does not provide a basis for changing the

Administrative Law Judge's decision.

Doc. 14-2 (alteration to original). Having exhausted his administrative remedies, Stone timely appealed the ALJ's decision to this court. Doc. 1.

**B.     Issues Presented**

Stone presents the following issues[3] for review:

1. Whether the ALJ erred by failing to reject Stone's testimony properly;

2. Whether the ALJ erred by "improperly acting as both Judge and medical doctor"; and

3. Whether the Appeals Council erroneously denied Stone's request to review the ALJ's decision in light of newly submitted "material" evidence.

Doc. 12 at 3–4. The Commissioner contends that Stone's arguments lack merit and the ALJ's decision is due to be affirmed. Doc. 13. After careful consideration of the parties' arguments, the applicable authority, and the record as a whole, the court finds that the Appeals Council erred when it denied Stone's request for review, and therefore, the Commissioner's decision is due to be REVERSED and REMANDED for additional proceedings consistent with this opinion.[4]

**C.     Analysis**

Stone argues that the Appeals Council erred when it declined to review the ALJ's

---

[3] These are the "issues presented" by Stone in his brief. Any issue not raised before the court is deemed to have been waived. *See Dial v. Berryhill*, 2017 WL 459859, at *3 (M.D. Ala. Feb. 2, 2017) (citing *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011) (concluding in a social security case that issues not raised before the district court are waived)).

[4] Moreover, because this case is remanded for consideration of additional evidence, as explained below, the court need not address the other issues raised by Stone. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1323 n.10 (11th Cir. 2015).

7

decision denying his request for disability benefits even after he submitted additional evidence of his impairments. The ALJ denied Stone's claims by written decision dated October 27, 2014. In that decision, the ALJ concluded that Stone suffered from, among other things, the "severe" impairment of "disc protrusion producing mass effect on the cord, cervical spine." Doc. 14-2. After considering Stone's impairments and their related limitations, including his spinal impairment, the ALJ determined that Stone has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but with certain physical, mental, and environmental limitations.[5] Doc. 14-2.

A review of the ALJ's decision shows that his RFC determination was based, in part, on an MRI[6] of Stone's cervical spine from Lake Martin Community Hospital on February 7, 2013 (the "February 2013 MRI"). The findings from that MRI show "no evidence of disc herniation" at the C4-5 level with "widely patent" foramina and normal facet joints. Doc. 14-7. At the C5-6 level, "there is midline and slightly predominately right of midline disc herniation with definite mass effect on the cord with some flattening," along with "widely patent" foramina and normal facet joints. Doc. 14-7. The ultimate impression from the MRI was "generous midline and slightly more so to the right than the left disc protrusion at the C5-6 level producing definite mass effect on the cord at this level. Remaining levels appear to be normal." Doc. 14-7. The ALJ accounted for these MRI findings in his RFC analysis, stating that

> [a]n MRI of the claimant's cervical spine was obtained on February 7, 2013 due to his continued complaints of neck pain, which showed left disc

---

[5] These limitations are detailed in Part III.A above.
[6] "MRI" stands for magnetic resonance imaging.

8

protrusion at the C5-6 level producing mass effect on the cord but no other abnormalities.

Doc. 14-2.

On December 8, 2014, less than two months after the ALJ's decision, Stone underwent another MRI (the "December 2014 MRI") on his cervical spine at Open MRI of Auburn Opelika. Unlike Stone's earlier MRI, this MRI found at the C4-5 level "small posterior central disc protrusion causing mild effacement of the ventral thecal sac with mild abutment of the ventral cord" and "mild spinal stenosis measuring approximately 9 mm in AP diameter. No significant neural foraminal stenosis." Doc. 14-10. At the C5-6 level, this MRI found "prominent posterior central disc protrusion causing impingement on the ventral cord with severe spinal canal stenosis measuring 5-6 mm in AP diameter. There is bilateral uncovertebral osteophytosis contributing to at least mild bilateral neural foraminal stenosis." Doc. 14-10. The ultimate impression from this MRI was

> [p]rominent posterior central disc protrusion causing impingement on the ventral cord with severe spinal canal stenosis measuring 5-6 mm in AP diameter at the C5-6 level. A smaller posterior central disc protrusion is seen at C4-5 causing mild effacement of the ventral thecal sac with abutment of the ventral cord and mild spinal canal stenosis measuring 9 mm in AP diameter. . . . Previous findings of cord impingement were described on the previous exam at the C5-6 level. The findings at the C4-5 may be new when compared to the previous exam.

Doc. 14-10.

Stone submitted the December 2014 MRI findings to the Appeals Council with his request for review. The Appeals Council made this evidence part of its record but still denied Stone's request, explaining that "this information does not provide a basis for changing the Administrative Law Judge's decision." Doc. 14-2. Stone argues that the

9

Appeals Council committed reversible error when it denied his request for review because the December 2014 MRI is new, material, and chronologically relevant evidence showing that the ALJ erred in denying his disability claims.

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b). "Evidence submitted for the first time to the Appeals Council is determined under a Sentence Four analysis." *Brown v. Comm'r of Soc. Sec.*, 2014 WL 4809506, at *4 (M.D. Fla. Sept. 26, 2014) (citing *Ingram*, 496 F.3d at 1261; 20 C.F.R. § 404.900(b)). The Appeals Council is required to "consider new, material, and chronologically relevant evidence that the claimant submits" and "must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Banks v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 709 (11th Cir. 2017) (citing *Washington*, 806 F.3d at 1320; 20 C.F.R. § 416.1476(b)(1)); *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008).

"Evidence is chronologically relevant if it 'relates to the period on or before the date' of the ALJ's decision." *Banks*, 686 F. App'x at 709 (quoting 20 C.F.R. § 416.1476(b)(1)). New evidence is "material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)).

Stone does not argue that the Appeals Council erred by failing to consider his December 2014 MRI. Indeed, it is apparent from the Appeals Council's decision that it

considered this newly submitted evidence when denying Stone's request for review, and nothing in the administrative record provides a basis for finding otherwise. Doc. 14-2; *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 822 (11th Cir. 2015); *see also Clough v. Soc. Sec. Admin., Comm'r*, 636 F. App'x 496, 497 (11th Cir. 2016) (finding that newly submitted evidence was not considered by the Appeals Council when denying review because the Appeals Council's opinion expressly found that the newly submitted evidence concerned a "later time" from what the ALJ's decision covered); *Washington*, 806 F.3d at 1320 (acknowledging that the Appeals Council had not considered newly submitted evidence when its opinion expressly stated that it had not considered the new evidence because it concerned a time period after the ALJ's decision); *Barclay*, 274 F. App'x at 743 (explaining that the Appeals Council had considered new evidence in deciding not to review the case when its opinion specifically stated that it had considered the additional evidence listed on the enclosed Order of Appeals Council). However, even though the Appeals Council considered Stone's December 2014 MRI, it ultimately found that this evidence was insufficient to show that the ALJ's decision was contrary to the weight of the evidence currently of record,[7] and it is this finding that Stone challenges as error.

Even though Stone's December 2014 MRI was conducted after the ALJ issued his denial decision in October 2014, this evidence is chronologically relevant because it relates

---

[7] "When the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not 'required to provide a detailed rationale for denying review.'" *Washington*, 806 F.3d at 1321 n.5 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)).

back to the period before the ALJ's decision. "Examinations conducted after the ALJ's decision may still be chronologically relevant if they 'relate back to the period before the ALJ's decision.'" *Clough*, 636 F. App'x at 497 (quoting *Washington*, 806 F.3d at 1323). The December 2014 MRI was conducted to investigate the source of neck pain Stone had been experiencing since before the ALJ's decision, including a bulging disc at C5 that was discovered by a prior MRI at Lake Martin Community Hospital. Indeed, the December 2014 MRI specifically mentions and relies on comparisons with the report and films generated from the prior MRI. The December 2014 MRI further mentions Stone's history of "tingling and numbness" and motor vehicle accidents in 2005 and 2007, all of which predate the ALJ's decision. Accordingly, the court finds that Stone's December 2014 MRI is chronologically relevant.

The December 2014 MRI is also new, since it did not exist at the time of the ALJ's decision, and it is likewise material because there is a reasonable possibility that the administrative outcome would have changed had this evidence been before the ALJ at the time of his decision. Although the ALJ found that Stone suffered from the severe impairment of "disc protrusion producing mass effect on the cord, cervical spine," this finding, and the resulting limitations incorporated into Stone's RFC based on this finding, were premised on the fact that the February 2013 MRI indicated only "slightly" predominately disc herniation at C5-6 and "no other abnormalities." Doc. 14-7. Indeed, in his RFC analysis, the ALJ remarked that the February 2013 MRI showed only "left disc protrusion at the C5-6 level producing mass effect on the cord but *no other abnormalities*." Doc. 14-2. The February 2013 MRI findings, however, are significantly different from the

December 2014 MRI findings in that the more recent MRI shows an entirely new disc protrusion at C4-5—whereas there were no abnormalities found at this level in the February 2013 MRI—and "prominent" disc protrusion causing impingement on the cord with "severe" spinal stenosis.  When comparing these MRI findings, which show the development of entirely new disc protrusions and an increase in the level of severity of preexisting impairments from February 2013 to December 2014, the court concludes that it is a reasonable possibility that the ALJ's decision might have changed had he considered the December 2014 MRI findings before denying Stone's claims.

The findings in the February 2013 MRI also factored into the ALJ's credibility analysis.  Indeed, the ALJ ultimately rejected Stone's testimony about his subjective pain and limitations to the extent that testimony was inconsistent with his RFC because, according to the ALJ, the objective medical evidence, including the February 2013 MRI findings, did not substantiate Stone's testimony of severely disabling pain and limitations from his neck and back issues.  When considering the record as a whole, there is a reasonable possibility that, had the ALJ considered Stone's December 2014 MRI findings before issuing his decision, the administrative outcome, including his RFC credibility determinations, might have changed.  Thus, it was error for the Appeals Council not to consider the ALJ's decision in light of the newly submitted MRI findings.

For these reasons, the court finds that the ALJ's decision is contrary to the weight of the evidence currently of record and, thus, the decision is due to be remanded to the Commissioner for consideration of Stone's December 2014 MRI findings in conjunction with all other evidence in the record. *See Brown*, 2014 WL 4809506, at *5 (remanding to

Commissioner to reconsider decision in light of new sleep apnea study when the "new medical evidence conflicts with the ALJ's findings, and the findings are contrary to the weight of the evidence currently of record").

## IV. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons stated above, the decision of the Commissioner is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider Stone's December 8, 2014 MRI from Open MRI of Auburn Opelika in conjunction with all the other evidence in the record. A final judgment consistent with this opinion will be entered separately.

DONE this 19th day of March, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE